You have four appeals to hear this morning. Counsel, we are familiar with your cases. We read your briefs. The authority cited in your briefs, at least portions of the record. Of course, the opinions of the district court. You don't have a lot of time this morning, so get straight to the heart of your argument. You don't have to educate us about what the case is generally about. We're going to have some questions, but be mindful of the traffic lights. When the red light shines, it's time to wrap it up. If you're finishing an answer from the court, you can, of course, complete your answer. But do be mindful of our time. Our first appeal this morning is Watson v. Bradsher. Ms. Falconer. Good morning. May it please the court, my name is Elizabeth Falconer, and I'm an attorney at Nelson, Mullins, Riley, and Scarborough. And we represent the appellant, Stanley Watson. Mr. Watson, an honest but unfortunate debtor, has been denied a discharge. Here, the bankruptcy court erred when it determined that a state court judgment debt owed to the appellees, Ms. Bradsher and Ms. Ali, arose from injuries that were both willfully and maliciously inflicted. Because injuries inflicted through an honest mistake cannot be willful and malicious under the stringent and narrow exception to discharge set forth in Section 523A6 of the Bankruptcy Code. So, our review for this fine is a clear error, right? Yes, sir. And so, it seems to me the problem with your argument is that the focus here is on whether the injury is willful, and it seems pretty clear, or at least not clear error, for the bankruptcy court to find that the confinement of these women was willful. Well, Your Honor... It may be that he thought there was a lawful basis for it, but the injury is their confinement. And that, to me, it looks like is willful. Well, Chief Justice Pryor, we would respectfully disagree with that. I think we would characterize the injury as the unlawful confinement. And in this scenario, one who has a genuine belief that they have been... You're too far getting from that the injury is the unlawfulness portion of it, as opposed to what Chief Justice Pryor just asked you about, which is the confinement part of it. Because I have done a deep exam, able to, as a Florida lawyer, into what Georgia law is with regard to false imprisonment. And it seems to me that my conclusion was similar to the premise of Chief Judge Pryor's questions, which is that the confinement element is the injury, and the unlawfulness goes to the nature of the confinement. But the injury result is you were held against your will. So, Your Honor, it's not from the case law for an intentional tort, because the plain reading of the statute under Section 523A6 just requires a willful and malicious injury. It does not require... It's the same law to determine what the injury is, right? Correct. And an injury just in Black's Law Dictionary is the invasion of a legal interest. And here, there cannot be an invasion of a legal interest if you are lawfully detained. He intended them to be lawfully detained, not unlawfully detained. And if someone has been lawfully detained, they have not been injured. It seems to me that the confinement is the injury. It may be that you have... To satisfy the tort under Georgia law, you have to also establish that it was unlawful. But in terms of what federal bankruptcy law is concerned with, the injury, that's a separate element, and the injury is the confinement. And we would categorize the injury as the unlawful confinement, because if you intended someone to be lawfully detained, you did not intend to injure that individual. They did not suffer an injury. If I'm remembering right, didn't the bankruptcy court say that your client's conduct was wrongful and without cause? Yes, Your Honor. Okay, so... I guess I kind of put a pin in the idea about whether it could have been mistaken or whatever. It seems like the bankruptcy court said that's not what happened. Am I misreading something? Your Honor, the bankruptcy court reasoned that conduct that would otherwise result in a dischargeable debt somehow now results in a non-dischargeable debt because he was loud and used propanity and did the same thing over and over again. He also abused his position as a county commissioner, right? And his intimidation of the officers to arrest. While maintaining a genuine belief that the appellees had stolen his wallet and that he was the victim of a crime. Yeah, that doesn't necessarily... That is not necessarily inconsistent with the idea that his behavior was excessive or malicious. It might well be that he had that genuine belief but he might nevertheless have been over the top in how he went about this and the way he basically abused his authority to get the officers to arrest them. I mean, the officers couldn't find his wallet on these women. Of course, we now know they didn't have it. It was in your client's pocket. Your Honor, the bankruptcy court found that he maintained that genuine belief that the theft had occurred throughout the entire duration of the event. The question that's being asked is there's two people who believe their wallet was stolen. One simply calls the 911 and says, my wallet was stolen, can you please come and investigate? The other person calls 911 and says, my name is Robert Luck, I am a judge of the 11th Circuit Court of Appeals, my wallet has been stolen, I demand that you come here and if you do not, I will hold you in contempt and see that your jobs are taken away. One is different than the other, you would agree? I would agree with that. Is it fair to say that one is more excessive than the other? Yes, but Your Honor, what is excessive conduct is unclear in this situation. It is not clearly defined in the case law. But the question is, and I think this gets to the question that Chief Judge Pryor asked, this is a factual issue. And under the facts here, could a reasonable jurist have concluded a plausible interpretation? Not that there's not another way to look at it, but a plausible interpretation of the facts is that the conduct here was excessive. And if it was, then that would seem to meet the malicious side of the prong, right? Your Honor, even if the court finds that the conduct was excessive, it still has to be willful. And in this case, he did not intend to injure Ms. Bradsher and Ms. Ali. He intended to have them lawfully confined. His intent was to have them investigate for stealing his wallet. His intent was not to cause an injury. Yes. So maybe I'm just kind of unclear about what the procedural posture is here. But the bankruptcy court said, I believe that he truly believed that they had his wallet, right? The bankruptcy court says that. It goes up to the district court. The district court says, well, based on that, there's one claim that works out, the slander claim. But the false arrest claim is still non-dischargeable. Then it comes up to us. What are our options here? So we agree with you. We what? We reverse. And you think we say that given the bankruptcy court's finding, the legal conclusion was incorrect? Is that what you want us to say? Yes, Your Honor. Okay. Why couldn't the bankruptcy court just revisit its finding? Well, its finding of fact should not be disturbed on appeal that he genuinely believed that he had stolen, that his wallet had been stolen. Why? Why wouldn't it be a do-over? We would take a do-over in this case, Your Honor, respectfully. But, I mean, it is our belief, in our opinion, that this finding of fact should not be disturbed on appeal because it is that finding that he genuinely believed that the appellee had stolen his wallet is not clearly erroneous. The application of that finding to the conclusion, applying that finding to its conclusion that the injuries were willful and malicious was clearly erroneous in this case. Yes, Your Honor, and that's the issue. The one finding is sort of downstream of the other, right? Like, I mean, you agree that we review for clear error the malicious and willful aspect of this. It just seems odd if we were to say, well, that was clearly erroneous because of this other finding, and we would just give the bankruptcy court the option to say, you know what, I shouldn't have said that. You know, there's lots of reasons to think that he didn't actually believe that they had his wallet. You know, they denied his request for a date, basically. You know, kind of made fun of him a little bit. He was drunk. He never seemed to look for his wallet, right, because he found it in his car the next day. You know, he was persistent in requiring that these people be arrested, even though there was no evidence that they had his wallet. There are lots of reasons why I think a judge could say, yeah, he didn't actually particularly, he didn't care whether they had his wallet or not when he was making this requirement. So why shouldn't the bankruptcy court have the option to just make, you know, what I think would be a reasonable fact-finding here? Well, Judge Brasher, because the bankruptcy court already took into consideration all of that evidence and still found that he genuinely believed that a theft had occurred. The bankruptcy court also found that once he found his wallet, he notified the police and did not continue accusing the appellees of the theft. So... The next day he was sober, right? I mean, wasn't it the next day? Yes, Your Honor. Also, the bankruptcy court found that the officer that arrested Ms. Brasher did so based on her conduct and not the allegations of Mr. Watson. Well, so there's a causation issue there, right? Because the way I understood the officer's position was, you know, your client accused them of something and that led her to, I don't know, vociferously object to that accusation, which led the officer to arrest her. So isn't the causation still go back to the accusation of the stealing of the wallet? Yes, and the accusation, as with the slander claim, they found by accusing the appellees of stealing his wallet did not intend to injure the appellees. And that has been a central issue in this case is the verdict form on which the state court judgment is based does not specify the claims on which the damages were awarded. And so the rationale, that conduct, that would otherwise result in a dischargeable debt somehow now results in a non-dischargeable debt because he did the same thing over and over and was allowed to use profanity while maintaining that genuine belief that his wallet had been stolen. And insisting on their arrest. Yes, Your Honor, he believed they had committed a crime and he wanted them to be arrested because he believed they had committed a crime. If the bankruptcy court's right about that fact-finding that he had that genuine belief, shouldn't he have not been held liable for this in state court? Right? I mean, wouldn't that be a defense to wrongful arrest? It is, Judge Brasher. However, liability for an intentional tort is not an element of whether an injury was willfully and maliciously inflicted. Once again, just to go back to this very unusual fact-finding that the bankruptcy court made that seems incorrect to me. How did the bankruptcy court make a fact-finding that is inconsistent with the findings that the jury made to hold your client liable for this in the first place? Like if the jury, I mean, in the trial of this, right, he said to the jury, you know, I thought they truly had taken my wallet. I didn't mean to do any of this. And then the jury found him liable anyway, right? How does the bankruptcy court then come around and say, I think the jury got that wrong? Your Honor, I think the bankruptcy court is able to reach that conclusion based on its consideration of the evidence in the record. Okay. All right. You say it's time for rebuttal. Let's hear from Mr. Brasher. Thank you, Your Honor. May it please the Court, I am Morris Barnard, attorney for the Applees in this action. And bankruptcy is not typically my area of expertise, but I'm here because these Applees had nobody else to represent them. Can you clarify one thing for the housekeeping matter for me? So the bankruptcy court action had spelled the name of one of your clients with two K's, but your brief and everything else appears to spell her name with two E's and not two K's, or double E and not two K's. Do you know which is right? Quite frankly, Your Honor, no. Because in terms of it, I think it's the double E, but I don't want to state that as absolute because I am not 100% certain. Did you represent the creditors in the original tort action? Yes, I represented them in the trial court. Yes, Your Honor. So the reason I asked that question, I thought the answer was yes, I just wanted to make sure. The reason I asked that is to get back to Judge Brasher's questions that he just asked your opposing counsel, and I've read the entire jury instructions. I've looked at the verdict form. I've looked at the judgment here, and I have to say it's one of the oddest I've ever seen, and that's because it seems to me that the jury was never instructed and the jury was never asked to make a finding specific as to any one tort. It seems to me that the way this was instructed and the way that this was given to the jury was here are three torts. Here is a judgment that says, do you find the defendant liable? And if so, how much money are my clients entitled to? Do I have that right? You do, Your Honor, and that was based actually on the trial court judge. And I believe you. I understand. Sometimes you've just got to roll with it. But I guess knowing that, are we able to tell, and if I'm the bankruptcy judge reviewing all of this, am I able to tell whether the jury found and there's collateral estoppel for false imprisonment or for slander or for battery? Your Honor, I cannot definitively answer that. The major gravamen was the false imprisonment. The slander was there, and I disagreed with the district courts. You said the major something? What did you say, the major? The major claim was the false imprisonment. That was the most injurious of the actions. Well, that may be the way you argue to the jury, but I'm saying just purely from what the jury found, I'm sitting as a bankruptcy judge. Am I really able to tell, for example, collateral estoppel purposes, which of these three the jury actually found and what were the damages on? Not from the verdict, Your Honor. Right. And so what happened here is that the bankruptcy judge rightfully said, I got a statute allowing this to come out. I'm going to determine what happened below and sort of recreate the best that I can under a preponderance of the evidence standard how this all shook out. And so here the bankruptcy judge said, I do find that the jury found willfulness and maliciousness with regard to false imprisonment and truly not as much damages to that. Right? That's why this all happened. I believe that is the correct analysis. But there's no dispute, as I understand it. There's no dispute, as I understand it, that that general verdict was a general verdict in favor of your clients. No, there's no dispute about that. On false imprisonment, right? Correct. To follow up and just to put the pin on this, my question to opposing counsel was, if the jury came back in favor of your client on false imprisonment, didn't the jury necessarily reject this argument that the defendant in that case, the debtor in this case, was just acting in good faith and had a legitimate basis to make these claims and whatnot? Your Honor, to address that, and I've raised this in the brief and I'm sure the court's aware of it, Mr. Watson was terribly intoxicated. And under Georgia law, that is no defense to the actions he took. The appellant has taken the position that he had a genuine belief. But he could have said that he had a genuine belief that's in the record, as you can see, that he was sober enough to drive. And everybody at the scene, he had four independent witnesses and the appellees who all were able to state that he was not sober and that he called them horrible names and made unjust accusations, even after he had told Officer Parker, Sergeant Parker, that he did not know who took his wallet. He clearly answered that to the question that Parker put to him. And nonetheless, he insisted that it was the appellees who took his wallet with no evidence. And this was a county commissioner spurned who had been embarrassed in public. Well, I don't believe he said there's no evidence. I mean, again, the bankruptcy judge found a reasonable belief here. And that fact doesn't seem to be challenged, at least at this point. And the reasonable belief, I think, stemmed from the fact that he only talked to at least one of your plaintiffs and really only had interaction with the two plaintiffs. And he had his wallet. He paid for a drink. And after the interaction, he couldn't find his wallet. Or he didn't pay for the drink. I apologize. He went to go pay for the drink and couldn't find his wallet. Actually, in the transcript, Your Honor, you will find that he put money in his pocket and he looked for his wallet, but he paid for the drinks with cash that he had on his purse. So his belief was, I thought I had my wallet. I can't find it anymore. These are the only people I interacted with. That obviously turned out to be wrong, but there was at least something to be able to suggest that he had the reasonable belief there. The real question is, where's the injury? What is the nature of the injury for false imprisonment under Georgia law? Because I know you know Georgia law. What is the injury? Well, the injury itself is false imprisonment. It is also that she was subjected to ridicule. I mean, that's the name of the tort. Right. She was put in a squad car. She was handcuffed. She was confined. Intentionally. Right. Yes. And it's sort of like Kafka's The Judgment, Your Honor. Here she is. She has no idea why she's being detained except the appellant. Everything that Judge Luck said, there's also a bit more that's going on here. The officers have actually searched your client's handbags and their purse and can't find his wallet. That's right. It may well be that suddenly his wallet is missing and these are the only individuals he's interacted with, of course, other than a bartender at least. But insofar as whether he has some kind of reasonable belief that they've got the wallet, they've since been searched and there is no wallet. That is correct. And even after that takes place, he's walking around the car. You have three different videos. And insisting that they be arrested. Right. Somebody's going to go to jail tonight. Is the right way to understand the bankruptcy court's fact-finding here on the reasonable belief thing is that at one point he had a reasonable belief that they stole his wallet, but then he took all the other actions sort of after that dissipated. I mean, the bankruptcy court said that reporting of an alleged crime did not require a defendant to continue claiming that plaintiffs had stolen his wallet and that they were going to go to jail. And after reporting that his wallet was missing and the officers began investigating, defendant's civic duty was done and his continued accusations using derogatory and profane language became wrongful and without just cause and excessive. So is it the idea here that at some point he had a reasonable belief, but then that reasonable belief didn't justify everything that he did? Well, I think, Your Honor, that Judge Luck hit it right on the head. You can either call 911 and say, my wallet's missing. Or you can say, I'm a county commissioner. And I think these two people, and in the video, if you will look at it, you will see that where he's at the bar, several different people pass him during the course of the evening. But he chose only these two people, the Applees, as the possible people to have taken his wallet. So what he did, and he's done this throughout, is that he will make statements. His testimony is incredible because he sits there and you ask him, did you say these two bitches stole my wallet? No, I didn't say that. And we went over it and over and over and finally concedes, yes, I may have said that. But if you look at the video, he says it. Okay, he gives self-serving statements throughout his testimony in order to avoid liability. And again, in the bankruptcy court, he says, well, I have a genuine belief my wallet was stolen. If it stops there, I think at that point, you know, the court has a right to sort of think, well, maybe that's the only issue. But it doesn't, as you pointed out. He goes on and continues, even after the women had been searched, their person's been searched, their pocketbooks have been searched, now they're in a car. And as you pointed out correctly, Sergeant Parker testified that they were not in any way acting disorderly in the premises until the appellant started accusing them of being thieves. And they were defending themselves as between the county commissioner and two people who were unknown, Sergeant Parker was going to make sure that he did something to protect the county commissioner until he realized at the end of the incident that the county commissioner was drunk and had no idea what he was doing and he wanted to arrest him for DUI and the powers that be wouldn't allow him to. Here was a man, you know, he's a civil servant who's doing his job and his superiors say, no, this is a county commissioner we can't afford to offend. He is not going to jail for DUI. And this has been a situation where he abused his power, he subjected these women to emotional trauma, and this was it. I mean, they're out there in a parking lot with all these people gawking at them, being arrested for a crime they didn't commit. One of the security officers is an off-duty police officer, right? And Watson threatens to call the police chief. He threatens that the bar is going to lose its food certification, that the employees are going to lose their jobs. And he threatens Parker. Who's going to get you your raises? Who's going to get you money? I thought he had said, I'm the one who's working to get you raises. Right. Which is at least an implied threat. So he was very much using his authority to gain a personal revenge on two women who he had ... How many people can solicit sex for hire and not be investigated for it? Well, if you're a county commissioner, that's what turned out the case. Officer Lewis was explicit in his testimony that he was told that Shanika Bradshir told him explicitly that Watson wanted to have sex with her and offer her basically money in exchange for sex. And this was not part of the report. It didn't make it into the report. The other aspect that I'd point out to the court is that the appellant said that he reported to the Dekalb County Police that he found his wallet. Well, there is an incident report that has not been changed and never has been changed saying that she was investigated and detained for suspicion of theft of his wallet. And that has never been corrected. So I put that to the fact that it was a malicious and intentional action on his part because he still had the opportunity to resolve it and he didn't. Thank you. Thank you, Mr. Bernard. Just a couple of safety minutes. Your Honors, because the court's willful and maliciousness determination cannot be reconciled even by the appellees with its finding that... I'm not trying to reconcile it. I asked a question that was trying to reconcile it. I mean, the bankruptcy court said, look, it was a good faith belief at some point. But then the bankruptcy court has all this other part of its opinion where it says after reporting his wallet, you know, he continued, he used this derogatory language, he continued to use his position. I mean, is this a way to reconcile it that the bankruptcy court said, yeah, at one point he had this good faith belief, but then he continued past that point? Is that a way to reconcile it? It would be. However, the bankruptcy court came to the opposite conclusion and found that he maintained that genuine belief throughout the entire duration of these events. Sorry, Your Honor. Give me one second. Okay. Sorry, Your Honor. It is in the bankruptcy court's order on remand. I just, I cannot find the... Give me one second. Yes, Your Honor. Okay. Yes, Your Honor, because the district court asked the bankruptcy court that very question. Is it possible that at some point he stopped, his belief did not become reasonable? And the bankruptcy court held that he maintained that genuine belief throughout the entire duration of the events. Yeah, I see what you're talking about. Can I ask one legal question? Thank you. So, imagine this set of facts. It's not what we have, but imagine this set of facts. The county commissioner did not have a reasonable belief. He had a malicious and willful intent to accuse these people of committing the crime of theft and did everything else that the county commissioner did here. And I'm who I am. I know the police chief. I was the one who got your raises and did it purposely and intentionally knowing it was false. These people were investigated and were given a citation to say show up in court on this date, but never held in the back of a car, never put in handcuffs, never confined. There's no injury there, correct? Correct. What makes it the injury then? The unlawful confinement. Right. The confinement. The only thing that separates that hypothetical that I asked and the next hypothetical, which is that they put them in the back of a car, is the confinement, right? Well, Your Honor, I would disagree because, again, when you're acting under the genuine belief that you've been the victim of a crime and you intend for someone to be arrested, the converse of that is if this badger had stolen his wallet and was put in the back of a cop car, that is not an injury. You know, here's the thing. You want to lump all the elements of the tort together, and the real discrete question for purposes of this question of federal bankruptcy law is whether the injury itself is willful. I'm reminded of torts. When you have a claim for negligence, you have duty, breach of duty, causation, and what? Damage. Damage. The injury is separate from whether there's been a breach of duty. And the injury here, the confinement, is a separate question from the lawfulness. Well, Your Honor, we take the position that it is not a question under Georgia law if he is liable for false imprisonment. It's a question of federal bankruptcy law. Correct. And which uses the formulation of a willful injury. But then we have to look at Georgia law to understand what the tort is. And the injury is the confinement. With all due respect, we would categorize the injury as the unlawful confinement because someone hasn't been injured. We understand your argument, Ms. Falconer. We appreciate it. And we understand your position as well. So I think we've really exhausted it and appreciate both of you coming and helping us this morning. Thank you.